United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff | ) | |
| v. | ) | Criminal Case No. 18-20640-CR-Scola |
| Kerlys Mercedes Chaparro, | ) | |
| Defendant. | ) | |

<u>Order Following Evidentiary Hearing on Motion to Suppress</u>

The Defendant, Kerlys Mercedes Chaparro, has been indicted and charged with one count of knowingly and fraudulently receiving an adulterated and misbranded substance that traveled in interstate commerce and injecting that substance into a human body for body contouring purposes. Chaparro has filed a motion to suppress statements [ECF No. 16] in which she claims a statement she made to agents at her home should be suppressed because she was interrogated while in custody and had not been advised of her *Miranda* warnings prior to the interrogation. She also claims the statement was not made freely, knowingly and voluntarily due to misrepresentations by the law enforcement agents. The Government filed a response [ECF No. 19] to the motion.

The Court conducted an evidentiary hearing on the motion on November 5, 2018. The following witnesses testified: Detective Linda Falcon, Special Agent Maximilian Pagano and Kerlys Chaparro.

After considering the credible evidence and testimony and the relevant legal authorities, and for the reasons set forth below, the Motion to Suppress is **denied**.

*Summary of Detective Falcon's and Special Agent Pagano's testimony:*
On July 27, 2016, Sarah Rojas went to Chaparro's house and paid her $700 cash for an injection to make her buttocks firm and give them more volume and a fuller look. After the injection, she suffered severe negative reactions which eventually led to emergency surgery to remove the foreign substance that had been injected.

Linda Falcon and Candido Cerda of the Miami-Dade County Police Department, Medical Crimes Unit, and Max Pagano of the Food and Drug Administration interviewed Rojas at Aventura Hospital on September 21, 2016. Rojas informed the law enforcement personnel that she was a neighbor of

Chaparro in Colombia, they had reconnected in the Miami area, and Rojas had paid Chaparro to perform the buttocks injection. Rojas was initially told by Chaparro that the injection was hyaluronic acid, which was like a vitamin, but after she suffered adverse consequences, Chaparro said that if Rojas did not notify law enforcement, Chaparro would provide Rojas with the name of the substance. Chaparro then told Rojas it was silicone.

Rojas signed a medical release form and consent to search form. Rojas allowed agents to search her phone for communications between her and Chaparro. Rojas showed a screen shot of a yellow note Chaparro had written with a fake name (Yazmin Pazquez) and phone number Chaparro wanted Rojas to use if Rojas was asked who had injected the substance. The actual product names (dimethylpolysiloxane and lidocaine) were sent by Chaparro to Rojas by WhatsApp.

Rojas agreed to participate in a recorded phone conversation with Chaparro which occurred on October 11, 2016.

Rojas asked Chaparro to provide her with a sample of the substance that she injected. On November 2, 2016, Rojas called Pagano and told him Chaparro had arranged delivery of the bottle to her. Rojas then turned the bottle over to Pagano and it was sent to the lab.

Rojas told agents that she believed that Chaparro would confess if she were approached by Pagano.

There were no other suspects besides Chaparro that agents were investigating relative to Rojas.

In early 2017, Pagano presented a package for prosecution to the U.S. Attorney's Office. No action was taken for some time by the U.S. Attorney's Office. The prosecutor who was assigned to the investigation eventually asked to speak to Rojas.

On April 25, 2018, Pagano went to Chaparro's apartment in Hialeah to verify that she lived there. Pagano spoke briefly to the mother-in-law who confirmed Chaparro lived there.

On the next day, April 26, 2018, at approximately 5:30 p.m., Falcon and Pagano went to Chaparro's apartment to interview her about two investigations. When they arrived, Chaparro's car was not in the parking area so they waited about 10 - 15 minutes for her to arrive. When her car arrived, they exited their vehicle, took a different stairwell from Chaparro and made contact with Chaparro just outside the door to her apartment. They identified themselves and told her they wanted to ask her questions regarding some FDA Office of Criminal Investigation investigations. Chaparro was wearing blue medical scrubs. Falcon

and Pagano were wearing plain clothes. They each had a firearm in an ankle holster that was not visible. Falcon and Pagano showed Chaparro their law enforcement credentials. Falcon told Chaparro she was not under arrest and it was voluntary for her to speak to the officers. Chaparro agreed to speak and invited the officers into the apartment. Falcon is fluent in Spanish and spoke to Chaparro in Spanish. Pagano speaks and understands some Spanish but is not fluent so Falcon interpreted any of his questions. Chaparro's mother-in-law and five year old daughter were also in the apartment.

      The agents and Chaparro sat at the dining room table. They asked Chaparro if it was okay to speak to her about the investigation in front of her mother-in-law. The agents did not read Chaparro her *Miranda* rights because she was not in custody. She was not restrained in any way and agents never told her she was a target of the investigation. No agents raised their voices, hollered or displayed a weapon during the interview. The tone of the interview was cordial and conversational. No one forced Chaparro to answer any questions. Chaparro never asked to stop the interview and never asked agents to leave. Agents did not tell her she was only a witness, did not assure her she was not in trouble, and did not tell her she did not need an attorney.

      About 15 minutes after they started speaking, Chaparro's husband arrived and sat at the table with them for about 10 minutes. The husband then left to go somewhere relating to their child's school.

      Chaparro was asked about her current work and told agents she worked as a body wrapper. Chaparro also told agents that she had previously worked in Colombia for a plastic surgeon named Francisco Sales Puccini. Agents were aware of Dr. Puccini but were unaware of Chaparro's connection to him.

      Chaparro did not tell agents that she thought she was injecting vitamins. She told agents she knew she was injecting silicone and knew it was illegal.

      Agents asked her if she had done this to any other patients. They may have asked her if she injected Botox since it is common for people who inject silicone to also inject Botox. Agents did not tell Chaparro that her case would be placed on hold if no additional victims were found.

      The interview with Chaparro lasted approximately 40 minutes. Before they left the apartment, agents asked Chaparro if they could search her apartment. Chaparro agreed and agents found a bottle of injectable lidocaine which they seized with her permission. Chaparro was told a prescription was needed for lidocaine. Chaparro told agents she had obtained it from a pharmacy in Hialeah without a prescription. Rojas had told agents that lidocaine was used by Chaparro during the injection.

During the interview, agents also asked Chaparro about two other targets, Salema Hernandez and Irina Angel.

When agents left, they told Chaparro that they appreciated her cooperation, no decision had been made about prosecution, and the information she had given agents would be provided to federal prosecutors.

The next time Falcon and Pagano met Chaparro was in early May 2018 to hand her a target letter which was dated May 2, 2018. Pagano wanted to give Chaparro a target letter to help her obtain an appointed attorney. She had been cooperative and Pagano believed an agreement to proceed by information could be reached if she had an attorney. Even though no attorney had been discussed during the interview with Chaparro, it was clear from their conversation that Chaparro could not afford an attorney. Falcon and Pagano went together to hand her the target letter. Falcon told Chaparro she needed an attorney and the letter would help her to obtain a public defender or court appointed attorney. Falcon did not tell Chaparro that she would be okay since she was just a witness in the case.

Chaparro was arrested approximately two months after she received the target letter.

*Summary of Chaparro's testimony:*
Chaparro is 40 years old and was born and grew up in Colombia. She has been married for 15 years to her husband, Eyeris, who is also Colombian.

Chaparro arrived in the United States in July 2011 because her husband's company in Colombia opened a branch here and needed her husband to work here.

Chaparro is a legal resident and her two children are citizens.

Chaparro studied technical instrumentation and cosmetology after high school in Colombia and began working with a plastic surgeon, Francisco Sales Puccini. She worked with Dr. Puccini for five or six years. She was his assistant during his surgeries.

Chaparro opened her own spa in Colombia and performed massages, healing and post-operative therapy. She left the spa in the hands of her partner when she moved to the United States.

Chaparro had never had interaction with law enforcement in Colombia or the United States prior to this case.

When she arrived in the United States, she obtained a license for body wrapping but it expired in October 2016 and she did not renew the license.

She met Sara Rojas through Rojas's husband who lived on the same block where she grew up and Rojas's husband was a close friend of Chaparro's husband. Rojas was born in the United States.

Sara reached out to Chaparro for a session of massages. During the first massage, Sara said she wanted to increase the volume of her buttocks. Chaparro said they could do massages but there were other things that were stronger but she did not do that.

Chaparro had injections in her buttocks done by Dr. Puccini in Colombia and told this to Sara. Sara said she wanted buttocks injections.

In July 2016, Chaparro injected what Chaparro believed to be Hialucorp which she thought was hyaluronic acid. The product came in a small amber jar. Chaparro did not use the entire bottle. On the first day she went to the doctor, Sara demanded the product that had been injected but Chaparro threw the remains away instead of giving them to Sara.

Chaparro learned much later what the actual substance was. She contacted the person, David Castellanos, and asked him to tell her exactly what product Chaparro had been given to inject.

After Sara had her medical problems, Chaparro cleaned Sara's house, cooked for her, took care of her daughter and paid $100 per month to Sara's mother. She stopped paying money in April 2018.

On April 26, 2018, she arrived home from work and was met by two people who called to her, "Chaparro?" They identified themselves to her. Agents did not display any weapons, nor did they make any threats to her. She was not handcuffed. Chaparro was surprised by their presence. Falcon told her, "he (referring to Pagano) is here due to an investigation and I am accompanying him because he does not speak Spanish." Falcon asked her if she would cooperate with them and Chaparro said, "yes." Falcon asked if they could come into her house and Chaparro said, "yes."

The first question they asked was, "in 2016, you made a telephone call?" and showed her a telephone number. Chaparro said she did not recognize the number but eventually realized it was Irina's number.

She was not told she was the target of an investigation and Chaparro did not think they were there for Sara Rojas.

Most of the time, Falcon spoke and Pagano would listen or just ask questions.

Chaparro's five year old daughter and mother-in-law were also in the apartment. Chaparro claims that at one point her daughter sat in her lap but Falcon told her the daughter could not be there with her.

Agents did not tell her that she was the target of the investigation, did not tell her she had the right to not answer their questions and did not tell her she had the right to an attorney. They did not tell her she had to answer their questions, only that they needed her cooperation.

Pagano told her he had been to Colombia for an investigation and asked her about Dr. Puccini. When her husband came home, Chaparro explained to him that the agents were there for an investigation of Dr. Puccini.

Chaparro claims that she wanted to leave for a "meet and greet" at her daughter's school but the agents told her "no, your husband is the one that should go and you need to stay here and finish the interview." Chaparro claims she did not feel free to leave. At that point, they had not asked about Rojas.

Agents also asked her about Salema Hernandez.

Agents told her they were not there for Chaparro. They reassured her that they just wanted her cooperation.

At one point, Falcon held a folder and said, "we know that you injected the buttocks of Rojas in 2016. The case is on hold because there has been no other complaint." Falcon asked if Chaparro had done any Botox injections or other injections. Falcon repeated that they were not there for the Rojas investigation.

There was no discussion about an attorney during the interview and no discussion of Chaparro's finances.

A couple of days later, Falcon called Chaparro on her cell phone and asked if she had an attorney. Chaparro asked why she needed an attorney. Falcon told her that even if she was a witness in a case, she needed to have an attorney.

After that, Falcon called her and told her she had to meet with Chaparro to hand her a letter which was to allow Chaparro to go to court so she can be given an attorney.

*Legal analysis:*

Chaparro claims that during the interrogation, her freedom was restrained and she did not believe she was free to leave or terminate the interview. She also claims that because she was the target of the investigation, agents should have read her the *Miranda* rights and that her statement was involuntary since agents made misrepresentations to her. The Court finds that Chaparro's testimony concerning the circumstances of the interview mostly mirrored the agents' testimony. To the extent her testimony differed from the agents, particularly her testimony that the agents forbade her to leave to go to the school, and her testimony that she was told she was only a witness, the Court finds the agents' testimony more credible.

*Miranda v. Arizona*, 384 U.S. 436 (1996), "established that custodial interrogation of a suspect cannot occur before a suspect is warned of his or her rights against self-incrimination." *United States v. Newsome*, 475 F.3d 122, 1224 (11th Cir. 2007). "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. A person is "in custody" for purposes of *Miranda* when there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted).

Whether a person is "in custody" is a mixed question of law and fact, and "depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001). The test is objective and viewed from the perspective of a reasonable innocent person. *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006). Factors include whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled, as well as the location and duration of the interaction. *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010).

"While an officer's suspicions regarding a suspect may bear upon the custody issue if they are conveyed to the suspect, even a clear statement from an officer that a person under interrogation is a prime suspect is not, in itself, dispositive of the custody issues, for some suspects are free to come and go until the police decide to make an arrest." *United States v. Lazarus*, 2014 WL 104212, at *3 (11th Cir. 2014) (internal quotation marks omitted) (quoting *Stansbury v. California*, 511 U.S. 318, 325 (1994)). In fact, agents left the apartment after the interview and Chaparro was not arrested that day. She was not arrested until three months later. The Defendant was in her own home, her movements were no restrained in any way, the agents never showed their weapons, never raised their voices and never made any threats to her. The Court finds no reasonable person under these circumstances would have believed they were not free to leave. Chaparro was not in custody and thus agents were not required to read her the *Miranda* rights.

Even though there was no *Miranda* violation, the Court must still determine whether Chaporro's statements were voluntary in order for them to be admissible at trial. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1317-18 (11th Cir. 2010). Considering the totality of the circumstances, including the

location of the interrogation and the nature of the questioning, the Court finds that Chaparro's statements were voluntary. Her statement was made during a non-custodial interview at her home during which she was not subject to any threats and was not physically detained.

The Court further finds that agents made no affirmative misrepresentations. A defendant seeking to show consent was induced by deceit or misrepresentation of the Government "must show affirmative acts by the agent that materially misrepresent the nature of the inquiry, and the showing must be by clear and convincing evidence." *United States v. Wuagneux,* 683 F.2d 1343, 1347 (11th Cir. 1982). The Court finds that there was no credible evidence that established any misrepresentation. The statements she made during the interview were freely, knowingly and voluntarily obtained and are admissible at trial.

*Conclusion:*

The Court considered Chaparro's motion to suppress [ECF No. 16] and the Government's response [ECF No. 19]. The Court additionally considered the credible testimony and evidence during the evidentiary hearing and arguments of counsel. The Court finds that the Defendant was not in custody and agents were not required to read her *Miranda* rights. The Court further finds there were no misrepresentations made to her and that her statements were made freely, knowingly and voluntarily.

Accordingly, the **Motion to Suppress** [ECF No. 16] is **denied.**

**Done and Ordered** at Miami, Florida, on November 6, 2018.

_____
Robert N. Scola, Jr.
United States District Judge